IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 19-cv-3050-WJM-SKC

MARTIN GALLAN,

    Plaintiff,

v.

BLOOM BUSINESS JETS, LLC,
BLOOM BUSINESS JETS, INC.,
BRAD ROSE, and
ROSE LAW, LLC,

    Defendants.

---

**ORDER EXTENDING TIME FOR SERVICE *NUNC PRO TUNC*,
GRANTING DEFENDANTS' MOTION FOR JOINDER, AND
DENYING DEFENDANTS' MOTION TO DISMISS**

---

This matter is before the Court on Defendant Bloom Business Jets, Inc.'s Motion to Dismiss Plaintiff's Complaint (ECF No. 11) and Defendants Brad Rose and Rose Law, LLC's Motion for Joinder (ECF No. 27).  For the reasons set forth below, the Motion for Joinder is granted, and the Motion to Dismiss is denied.

## I.  BACKGROUND

On October 24, 2019, Plaintiff Martin Gallan filed this diversity action against Defendants, bringing claims under the Colorado Uniform Fraudulent Transfer Act, Colo. Rev. Stat. § 38-8-101 *et seq*.  (ECF No. 1.)

### A.  Factual Allegations

Plaintiff's allegations, which the Court accepts as true for purposes of the Motion to Dismiss, are summarized as follows.

Plaintiff is an individual residing in North Carolina. (¶ 1.)[1] Defendant Bloom Business Jets, LLC ("BBJ LLC") is a Colorado limited liability company which, from its inception in January 2001 until approximately March 2017, engaged in the commissioned sales of aircraft. (¶ 2.) Defendant Bloom Business Jets, Inc. ("BBJ Inc.") is a Colorado corporation that has been engaged in the commissioned sales of aircraft since the date of its inception, March 10, 2017. (¶ 3.) Defendant Brad Rose ("Mr. Rose") is an attorney licensed in the state of Colorado. (¶ 4.) Defendant Rose Law, LLC ("Rose Law") is a law firm and Colorado limited liability company, of which Mr. Rose is the sole owner and manager. (¶ 5.) Non-party Steven Bloom ("Mr. Bloom") is an individual residing in Colorado; Mr. Bloom is the sole owner and manager of BBJ LLC, and the sole owner and officer of BBJ Inc. (¶ 6.)

On January 19, 2017, Plaintiff filed a complaint in this District against Mr. Bloom, BBJ LLC, and another party the identity of whom is irrelevant here, bringing various claims relating to Mr. Bloom and BBJ LLC's alleged sale of a faulty aircraft to Plaintiff (the "Underlying Lawsuit"). (¶ 9.) On March 3, 2017, in the U.S. Bankruptcy Court for the District of Colorado, Mr. Bloom filed for personal bankruptcy (the "Bankruptcy Case") under Chapter 13 of the U.S. Bankruptcy Code (the "Code"),[2] 11 U.S.C. § 101 *et seq.* (¶ 10.) On June 28, 2017, Mr. Bloom's bankruptcy petition was converted to a petition under Chapter 11 of the Code. (*Id.*)

---

[1] Citations to a paragraph number, without more, are to paragraphs in Plaintiff's Complaint (ECF No. 1).

[2] On May 10, 2019, as a result of Mr. Bloom's bankruptcy filing, Plaintiff voluntarily dismissed Mr. Bloom from the Underlying Lawsuit. (¶ 11.)

2

On March 10, 2017, one week after Mr. Bloom filed for bankruptcy, Mr. Bloom formed BBJ Inc. (¶ 12.) Thereafter, Mr. Bloom began to operate his aircraft-sales business through BBJ Inc., and the operations of BBJ LLC began to wind down. (¶ 13.) Sometime in mid-March 2017, Mr. Bloom transferred the assets of BBJ LLC to BBJ Inc., "including the goodwill of his business and all future profits, for no consideration whatsoever." (¶ 14.) Plaintiff asserts that Mr. Bloom, through BBJ LLC and BBJ Inc. and with the assistance of Mr. Rose and Rose Law, transferred these assets with the intent to render BBJ LLC insolvent, such that Plaintiff would not be able to recover against BBJ LLC in the Underlying Lawsuit. (¶ 17.)

**B.    Procedural History**

Plaintiff filed his Complaint in this action on October 24, 2019. (ECF No. 1.) Plaintiff served Defendants with his Complaint, and returned executed summonses on December 6, 2019. (ECF Nos. 6–9.) However, these initial summonses did not bear either the Clerk's signature or the Court's seal, rendering them defective under Federal Rule of Civil Procedure 4(a). (*See* ECF Nos. 6–9 (initial summonses), 17 at 2–3 (Plaintiff conceding that the initial summonses were defective).) On January 22, 2020, the Clerk issued summonses upon Plaintiff's request (ECF No. 16), and Plaintiff returned them executed on February 4, 2020 (ECF Nos. 19–22). The returned summonses reflect a service date of January 31, 2020. (*Id.*)

On January 15, 2020, BBJ Inc. filed the instant Motion to Dismiss. (ECF No. 11.) BBJ Inc. argues that dismissal is proper respectively under Federal Rules of Civil Procedure 12(b)(4) or (5), 12(b)(1), and 12(b)(6) because (1) Plaintiff's summonses were defective; (2) the bankruptcy court in the Bankruptcy Case retains exclusive

jurisdiction over Plaintiff's fraudulent transfer claims; and (3) Plaintiff is judicially estopped from asserting such claims. (*Id.*)  On January 29, 2020, Plaintiff filed his Response (ECF No. 17), and on February 12, 2020, BBJ Inc. filed its Reply (ECF No. 26).  On February 18, 2020, Mr. Rose and Rose Law filed their Motion to Join BBJ Inc.'s Motion to Dismiss.  (ECF No. 27.)

## II.  LEGAL STANDARDS

### A.     Rules 12(b)(4) & (5)

"Rules 12(b)(4) and 12(b)(5) allow a defendant to defend against a claim on the grounds of insufficiency of process and insufficiency of service of process."  *Whitsell v. United States*, 198 F.3d 260, 260 (10th Cir. 1999).  "A Rule 12(b)(4) motion constitutes an objection to the form of process or the content of the summons rather than the method of its delivery."  *Oltremari by McDaniel v. Kan. Soc. & Rehab. Serv.*, 871 F. Supp. 1331, 1349 (D. Kan. 1994).  "A Rule 12(b)(5) motion . . . challenges the mode or lack of delivery of a summons and complaint."  *Id.*  When the sufficiency of process is challenged, the "[p]laintiff must demonstrate that the procedure employed by him to effect service satisfied the requirements of Rule 4 of the Federal Rules of Civil Procedure."  *Sarnella v. Kuhns*, 2018 WL 1444210, at *1 (D. Colo. Mar. 23, 2018).

### B.     Rule 12(b)(1)

The purpose of a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is to test whether the Court has subject matter jurisdiction to properly hear the case before it.  It may take one of two forms: a facial attack or a factual attack.  When reviewing a facial attack on a complaint pursuant to Rule 12(b)(1),

the Court accepts the allegations of the complaint as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a factual attack on a complaint supported by affidavits and other documents, the Court makes its own factual findings and need not convert the motion to one brought pursuant to Rule 56. *Id.* at 1003.

**C.     Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." The 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

### III. ANALYSIS

**A.     Mr. Rose & Rose Law's Motion for Joinder**

In their Motion for Joinder, Mr. Rose and Rose Law seek to join in the instant

Motion to Dismiss. The Court will grant Mr. Rose and Rose Law's Motion for Joinder, and will treat the Motion to Dismiss as if it had been brought by BBJ Inc., Mr. Rose, and Rose Law. These Defendants will all be bound by the Court's rulings on the Motion to Dismiss as set forth below.

**B.     Service of Process**

Federal Rules of Civil Procedure 4(a)(1)(F) and (G) require, respectively, that a summons "be signed by the clerk" and "bear the court's seal." Additionally, Rule 4(m) states that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."

Because Plaintiff's initial summonses did not bear the Court's seal or the Clerk's signature, they were defective under Rule 4(a). And while Plaintiff subsequently cured these defects and served Defendants a second time, this service did not occur until 9 days after the 90-day time limit for service expired (*i.e.*, 99 days after the complaint was filed) (*see* ECF Nos. 1, 19–22). *See* Fed. R. Civ. P. 4(m).

"[I]f the plaintiff shows good cause" for failing to timely effect service, "the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). And even if the plaintiff is unable to demonstrate good cause, "the district court must still consider whether a permissive extension of time may be warranted. At that point the district court may in its discretion either dismiss the case without prejudice or extend the time for service." *Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995).

While Plaintiff does not argue that his failure to timely effect service on Defendants is excusable by good cause, the Court nevertheless concludes that dismissal under Rules 12(b)(4) or (5) would be inappropriate.

The Court finds it significant that (1) Plaintiff attempted to serve Defendants within the time provided by Rule 4(m); (2) while the initial summonses were nominally deficient, there is no dispute the initial service put Defendants adequately on notice of Plaintiff's allegations; (3) Plaintiff appears to have acted in good faith in that he requested summonses from the Clerk only one day after the deficiency of the summonses was pointed out by Defendants in their Motion to Dismiss; (4) process was properly served on Defendants only 9 days after the deadline passed; and (5) Defendants have failed to demonstrate that the technical inadequacy of service prejudiced them in any way.[3]  *See Salazar v. City of Albuquerque*, 278 F.R.D. 623, 628 (D.N.M. 2011).  Accordingly, the Court will exercise its discretion to order that the deadline for effecting service on Defendants is extended, *nunc pro tunc*, to February 4, 2020.  *See Tyson v. City of Sunnyvale*, 159 F.R.D. 528, 530 (N.D. Cal. 1995); *Buckley v. Doha Bank Ltd.*, 2002 WL 1751372, at *3 (S.D.N.Y. July 29, 2002); *Czernicki v. Lieberman*, 2003 WL 21056984, at *1 (E.D.N.Y. Feb. 28, 2003); *Burke v. Vision Gov't*

---

[3]  Defendants argue that they have suffered prejudice: "[BBJ Inc.] has been forced to expend time and resources defending [Plaintiff's] frivolous claims.  Further, [BBJ Inc.]'s ability to do business unfettered is hampered as a named Defendant in this action.  As a result, BBJ Inc. continues to suffer damages and prejudice.  Plaintiff's Complaint must be dismissed." (ECF No. 27 at 2.)  This argument is manifestly without merit.  The relevant question is not whether Defendants are prejudiced by having to defend themselves in this lawsuit—it is whether Defendants were prejudiced by the initial summonses failing to bear the Court's seal and the Clerk's signature, or by the untimeliness of the second service of process.  *See Salazar v. City of Albuquerque*, 278 F.R.D. 623, 628 (D.N.M. 2011).  Defendants simply do not address these particular issues, and the Court therefore concludes that they have not demonstrated prejudice.

*Solutions, Inc.*, 2018 WL 6272757, at *6 (D. Conn. Nov. 30, 2018). Because Plaintiff appropriately served Defendants on or by that date (*see* ECF Nos. 19–22), the Court will deny Defendants' Motion to Dismiss to the extent it is based on Rules 12(b)(4) and (5).

**C.    Judicial Estoppel**

BBJ Inc. further argues that the doctrine of judicial estoppel precludes Plaintiff from bringing the claims asserted in this lawsuit.

"[J]udicial estoppel is an equitable doctrine invoked by a court at its discretion." *Queen v. TA Operating, LLC*, 734 F.3d 1081, 1087 (10th Cir. 2013) (internal quotation marks omitted). "The purpose of judicial estoppel is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment . . . and to prevent improper use of judicial machinery." *Id.* (alterations incorporated; internal quotation marks omitted). "Three factors typically inform the decision whether to apply the doctrine in a particular case":

> First, a party's subsequent position must be clearly inconsistent with its former position. Next, a court should inquire whether the suspect party succeeded in persuading a court to accept that party's former position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Finally, the court should inquire whether the party seeking to assert an inconsistent position would gain an unfair advantage in the litigation if not estopped.

*Eastman v. Union Pac. R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007) (alterations incorporated; internal citations and quotation marks omitted).

As an initial matter, this case clearly presents far different circumstances from

those in which the Tenth Circuit has held that judicial estoppel is appropriate. For instance, in *Eastman*, 493 F.3d 1151, the plaintiff sought to recover in a worker's compensation suit which, as the debtor in his personal bankruptcy proceedings, he had failed to disclose to the bankruptcy court as an asset. *Id.* at 1153–54. The court, finding significant (if not dispositive) its conclusion that Plaintiff deliberately failed to satisfy his legal obligation to inform the bankruptcy court of the pending lawsuit, held that the plaintiff was judicially estopped from proceeding with those claims. *Id.* at 1160*; see id.* at 1159; *see also Queen*, 734 F.3d at 1087–94 (similar).

Defendants' only argument concerning judicial estoppel here is that Plaintiff's claims in this case are inconsistent with Plaintiff's voluntarily dismissal of Mr. Bloom from the Underlying Lawsuit, and Plaintiff's failure to assert claims against Mr. Bloom in the Bankruptcy Case. The Court disagrees.

First, Defendants' argument that Plaintiff's voluntary dismissal of Mr. Bloom (without prejudice) from the Underlying Lawsuit should preclude him from bringing his current claims—none of which are brought against Mr. Bloom—is unavailing. As Defendants acknowledge, Plaintiff dismissed Mr. Bloom after Mr. Bloom filed his bankruptcy petition. (ECF No. 11 at 4.) And as Defendants are also aware (*see id.* at 8), Plaintiff only did so because, once Mr. Bloom's petition was filed, Plaintiff was legally precluded from continuing to pursue his claims against Mr. Bloom in the district court until the close of the Bankruptcy Case. *See* 11 U.S.C. § 362 (automatic stay provision); (Civil Action No. 17-cv-186-RBJ, ECF No. 19). There is nothing about these steps undertaken by Plaintiff that is inconsistent with him now bringing fraudulent transfer and

related claims against Defendants in this case; let alone does it evince a deliberate attempt by Plaintiff to misuse the machinery of any court.  *Cf. Eastman*, 493 F.3d at 1156–60.

The same can be said of Plaintiff's failure to submit a claim against Mr. Bloom's estate in the Bankruptcy Case.  First, as Defendants themselves point out (ECF No. 11 at 10), Plaintiff has not participated at all in those proceedings.  It therefore is difficult to understand how Plaintiff has maintained a litigation posture in that case at all, let alone one that is inconsistent with the one he maintains here.  While it may have been wise for Plaintiff to participate in the bankruptcy proceedings, he certainly was not required to do so (unlike the plaintiff in *Eastman*, who was legally obligated to disclose to the bankruptcy court all of his potential assets).

Moreover, even if it were true that Plaintiff's position in this litigation is "clearly inconsistent" with the positions he has taken in the Underlying Lawsuit and/or the Bankruptcy Case, Defendants do not even attempt to explain (1) how this Court, or the court in the Bankruptcy Case or the Underlying Lawsuit could appear to have been misled; or (2) how Plaintiff could possibly be at an unfair advantage by bringing his claims in this forum.  Regardless, the Court does not believe that any of the factors favoring judicial estoppel obtain in this case.  Defendants Motion to Dismiss will be denied to the extent it seeks dismissal based on judicial estoppel.

**D.      Subject Matter Jurisdiction**

The parties disagree as to whether the Court is vested with subject matter jurisdiction to entertain Plaintiff's claims in light of the pending Bankruptcy Case.

28 U.S.C. § 1334(e) provides that a bankruptcy court has exclusive jurisdiction

"of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." *In re Amerson*, 839 F.3d 1290, 1298 (10th Cir. 2016). The question here is whether the assets of BBJ LLC and/or BBJ Inc., the subject of the allegedly fraudulent transfer, constitute either "property of the debtor" or "property of the estate." If they do, the Court must dismiss Plaintiff's claims because the bankruptcy court retains exclusive jurisdiction over them.

Property of a bankruptcy estate includes, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the [bankruptcy] case." 11 U.S.C. § 541. "For purposes of most bankruptcy proceedings, property interests are created and defined by state law. Once that state law determination is made, however, [a court] must still look to federal bankruptcy law to resolve the extent to which that interest is property of the estate under § 541." *In re Dittmar*, 618 F.3d 1199, 1204 (10th Cir. 2010). "[T]he scope of § 541 is broad and should be generously construed, and [ ] an interest may be property of the estate even if it is novel or contingent." *Id.* at 1207.

Plaintiff asserts that Mr. Bloom "is the sole owner and officer of BBJ, Inc. and sole owner and manager of BBJ, LLC." (¶ 6.) Defendants contend that, consequently, the assets of BBJ LLC that Mr. Bloom allegedly transferred to BBJ Inc. constitute property of Mr. Bloom's bankruptcy estate. (ECF No. 11 at 8–10.) Plaintiff disagrees, arguing that Mr. Bloom's estate does not have a qualifying property interest in the assets of BBJ LLC or BBJ Inc. (what Plaintiff asserts are "money, capital goods, receivables, and good will"), but only in "the membership interest in BBJ, LLC, and the shares of stock in BBJ, Inc., along with an equitable interest in distributions and

11

dividends only therefrom." (ECF No. 17 at 4.)

Defendants believe that *Delgado Oil Co., Inc. v. Torres*, 785 F.2d 857 (10th Cir. 1986) is dispositive of this issue. In *Delgado*, the plaintiff brought a preferential transfer claim against the defendant, the director of an insolvent corporation. *Id.* at 859. Subsequently, the corporation filed for Chapter 11 bankruptcy. *Id.* at 859. The non-bankruptcy litigation nevertheless went forward, and the plaintiff won at trial. *Id.* at 859. On appeal, the Tenth Circuit reversed the district court, holding that "the bankruptcy court is the only court with postbankruptcy subject matter jurisdiction over preferential transfers *of the debtor's property*." *Id.* at 860 (emphasis added).

*Delgado* clearly does not control this case. In *Delgado*, the plaintiff sued a corporate director for the preferential transfer of what were indisputably corporate assets. *See id.* Because the corporation *itself* was the debtor, its assets plainly constituted "property of the debtor" or "property of the estate." In this case, however, it is not at all clear that the property allegedly transferred constitutes property of *Mr. Bloom* (*i.e.,* "property of the debtor"), or property of *Mr. Bloom's* bankruptcy estate.

Defendants further point to *In re Albright*, 291 B.R. 538 (Bankr. D. Colo. 2003) in support of their argument. In that case, the debtor, an individual, was the sole member and manager of an LLC. *Id.* at 539. The LLC owned a parcel of real property and was not itself a debtor in bankruptcy. *Id.* at 539. The trustee sought to sell the parcel, and the debtor argued that the trustee lacked authority to liquidate or otherwise dispense with the assets of the LLC. *See id.* at 539–41. The court reasoned that "because the Trustee became the sole member of [the] LLC upon the Debtor's bankruptcy filing, the

Trustee now controls, directly or indirectly, all governance of that entity, including decisions regarding liquidation of the entity's assets." *Id.* at 541; *accord In re Modanlo*, 412 B.R. 715, 727–31 (Bankr. D. Md. 2006). *Albright* supports Defendants' argument to the extent the decision can be read as concluding that the parcel of real property owned by the LLC was part of the individual debtor's bankruptcy estate.

However, as the court explained in *In re Penn*, 2010 WL 9445533 (Bankr. N.D. Ga. April 2, 2010), that was not the basis for the court's holding in *Albright*:

> The issue [in *Albright*] was not whether the property owned by an LLC was itself property of the individual debtor's estate, but rather whether the trustee of the individual debtor's Chapter 7 bankruptcy estate had the authority to liquidate the LLC's assets because the individual debt was the sole owner and manager of the LLC.
>
> The trustee did not assert that he had authority to sell the LLC's assets because they were property of the debtor's bankruptcy estate. Instead, his authority for liquidating the property arose because he had succeeded to the debtor's authority as "the sole member and manager of the LLC" to control the LLC and to "cause the LLC to sell the Real Property and distribute the net sales proceeds to [the] bankruptcy estate." *Albright*, 291 B.R. at 540.
>
> The court even recognized this distinction in a footnote, noting that, rather than using his authority to sell the property of the LLC, the trustee could have instead used his authority over the LLC to dissolve it, distribute the property itself to the individual debtor's bankruptcy estate, and move to sell the property as property of the bankruptcy estate. *Id.* at 540 n.2.

*Penn*, 2010 WL 9445533 at *3 (line breaks added).

In *Penn*, the question for the court was whether the Code's automatic stay provisions applied to a foreclosure sale of property owned by the individual debtor's solely-owned LLC. The Code (11 U.S.C. § 362(a)) imposes an automatic stay on

13

proceedings involving "property of the [debtor's] estate" when a bankruptcy petition is filed. *In re Peeples*, 880 F.3d 1207, 1214 (10th Cir. 2018). The court, in keeping with the weight of authority on this issue, concluded in the negative.

Stating that *Albright* did not suggest otherwise, the court explained that "[a] separate legal entity that is established to hold property is considered a separate legal entity for that purpose and, should that legal entity desire bankruptcy protection, it must file its own petition." *Id.*, at *2 (citing *Kreisler v. Goldberg*, 478 F.3d 209, 213 (4th Cir. 2007) (automatic stay provisions do not apply to property owned by a third party); *In re Sheu*, 2009 WL 1794473 (Bankr. E.D.N.Y. 2009) (refusing to extend the automatic stay in an individual debtor's bankruptcy case to cover property over which the debtor's wholly owned corporation held title)).

Indeed, "[t]he fact that an individual debtor holds an interest in another entity does not give that individual a direct ownership interest in the assets owned by the other entity." *Id.*, at *2 (citing *Kreisler*, 478 F.3d at 214 ("The fact that a parent corporation has an ownership interest in a subsidiary, . . . does not give the parent any direct interest in the assets of the subsidiary."); *In re Commercial Mortg. & Fin. Co.*, 414 B.R. 389 (Bankr. N.D. Ill. 2009) ("As a general rule, property of the estate includes the debtor's stock in a subsidiary, but not the assets of the subsidiary."); *In re Murray*, 147 B.R. 688 (Bankr. E.D. Va. 1992) (denying debtor's motion for enforcement of the automatic stay against turnover of property owned by a corporation in which she was the sole shareholder)); *see also* Colo. Rev. Stat. § 7-103-102(1)(d) (providing that Colorado corporations may "[p]urchase, take, receive, lease or otherwise acquire, own,

hold, improve, use, and otherwise deal in and with real or personal property"); *id.* § 7-80-104(1)(b) (providing the same as to Colorado LLCs).

The Court agrees with the analysis in *Penn*, and further concludes that the weight of authority mandates a conclusion that the assets of BBJ LLC and BBJ Inc. do *not* constitute property of Mr. Bloom's bankruptcy estate.[4]  *See In re Furlong*, 660 F.3d 81, 89–90 (1st Cir. 2011); *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986); *Patton v. Bearden*, 8 F.3d 343, 349 (6th Cir. 1993); *In re Mohr*, 538 B.R. 882, 888 (Bankr. S.D. Ga. 2015); *In re Brittain*, 435 B.R. 318, 324 (Bankr. D.S.C. 2010); *In re Anderson*, 2010 WL 3941638 (Bankr. N.D. Ga. July 23, 2010); *Kreisler*, 478 F.3d at 214; *Sheu*, 2009 WL 1794473; *Commercial Mortg. & Fin. Co.*, 414 B.R. 389; *Murray*, 147 B.R. 688.

Because Plaintiff's fraudulent transfer claims do not concern property of Mr. Bloom's bankruptcy estate, the Court retains subject matter jurisdiction over those claims.  Accordingly, Defendants' Motion to Dismiss, to the extent it is based on Rule 12(b)(1), will be denied.

## D.     Claims Against Mr. Rose & Rose Law

Defendants argue that Plaintiff's claims against Mr. Rose and Rose Law are precluded by *Alexander v. Astine*, 152 P.3d 497 (Colo. 2007).  The Court disagrees with this contention as well.

In *Alexander*, a bankruptcy trustee sued both the director of the debtor

---

[4] Remarkably, Plaintiff failed to cite to the Court any legal authority for this proposition. (*See* ECF No. 17 at 3–5.)  This required the Court to conduct its own exhaustive legal research in order to definitively, and correctly, rule on this issue.

15

corporation for breach of fiduciary duty to the corporation's creditors, as well as the corporation's attorneys for aiding and abetting the director's breach of fiduciary duty. *Id.* at 499–500. The Colorado Supreme Court held that the trustee lacked standing under § 544(a) of the Code to pursue the aiding-and-abetting claim against the attorneys. *Id.* at 503.

The court explained that "[§] 544(a) gives the trustee the power to avoid transfers and obligations of the debtor, including the power to bring claims that the debtor's creditors themselves could bring to satisfy judgments against the debtor under the applicable state law." *Id.* at 501 (citing *Zilkha Energy Co. v. Leighton*, 920 F.2d 1520, 1523 (10th Cir. 1990)). The court consequently proceeded to determine "whether judgment lien creditors may sue a corporation's president for a breach of fiduciary duty under Colorado law." *Id.* at 501. It concluded that while directors of insolvent corporations do owe some duties to the corporation's creditors, the bankruptcy trustee had "failed to allege that the president breached his limited fiduciary duty to [the corporation's] creditors." *Id.* at 503. Thus, because a creditor could not have maintained a claim against the corporate president under those circumstances, neither could the bankruptcy trustee. *See id.* at 503. As to the aiding-and-abetting claim against the attorneys, the court stated: "Because we conclude that [the plaintiff / trustee] failed to allege that [the corporation's] president breached a fiduciary duty owed to [the corporation's] creditors, on the facts of this case the attorneys cannot be liable on [the plaintiff / trustee's] aiding and abetting claim." *Id.* at 503.

Defendants argue that, "[a]s in *Alexander*, Plaintiff does not allege (nor can he)

any violation of an officer's or director's duty by Mr. Bloom or Mr. Rose.  Thus, the Plaintiff lacks standing for his claims against Mr. Rose and [Rose Law]." (ECF No. 11 at 12.)  This argument misses the mark entirely.  The basis for the court's rejection of the aiding-and-abetting claims against the attorneys was that the plaintiff had failed to adequately allege an underlying claim against the corporate director.  *See id.* at 503.  Because Plaintiff's underlying (fraudulent transfer) claims against BBJ LLC and BBJ Inc. shall proceed for the reasons set forth above, there is no basis to dismiss the aiding-and-abetting claims against Mr. Rose and Rose Law under *Alexander*.  Defendants' Motion to Dismiss will be denied in this respect as well.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. The deadline for serving process on Defendants is EXTENDED, *nunc pro tunc*, to February 4, 2020;

2. Mr. Rose and Rose Law's Motion for Joinder (ECF No. 27) is GRANTED;

3. Defendants' Motion to Dismiss (ECF No. 11) is DENIED;

4. The Stay (ECF No. 41) is LIFTED; and

5. The parties shall forthwith comply with the order entered by U.S. Magistrate Judge S. Kato Crews filed at ECF No. 41 in order to promptly reset the Scheduling Conference.

Dated this 20th day of August, 2020.

BY THE COURT:

_____
William J. Martínez
United States District Judge